IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN CONGDON, et al., | ) |
| Plaintiffs, | ) Case No. 17 C 5502 |
| v. | ) Judge Virginia M. Kendall |
| CHEAPCARBBEAN.COM, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Brian Congdon and Lisa Congdon filed this suit against Defendants Cheapcaribbean.com, Inc. ("Cheapcaribbean.com"), Apple Vacations, LLC ("Apple Vacations"), Amstar DMC, S.A. ("Amstar"), and Apple Leisure Corporation in the Circuit Court of Cook County, Illinois, alleging negligence and other causes of action arising out of a motor vehicle accident that occurred while Plaintiffs were on vacation in Mexico. (Dkt. 1-1). After removing the case to federal court (Dkt. 1), Cheapcaribbean.com, Apple Vacations, and Amstar moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Dkt. 12). Plaintiffs opposed dismissal and moved to remand the case to state court pursuant to 28 U.S.C. § 1447(c) for lack of federal diversity jurisdiction. (Dkt. 18). For the reasons stated below, the Court denies Plaintiff's motion for remand (Dkt. 18), grants Defendants' motion (Dkt. 12), and dismisses the case without prejudice for lack of personal jurisdiction.

## BACKGROUND

The following facts are based on the allegations in the complaint and the statements provided in the affidavits submitted by Defendants that controvert or supplement the Plaintiffs' allegations.

According to the allegations in the complaint, on March 6, 2015, Plaintiffs Brian Congdon and Lisa Congdon, who are Iowa citizens, purchased an all-inclusive travel package to Mexico "through a telephone representative of Cheapcaribbean.com." *See* (Dkt. 1-1 at ¶¶ 1–2, 7). The package included airfare, ground transportation from the Cancun airport to a resort, and a stay at the resort. *Id*. at ¶¶ 8–13. According to Plaintiffs, in the telephone call in which they booked their trip, they were told that they were purchasing a vacation package from Defendant Apple Vacations and that they would be greeted by Apple Vacations representatives in Mexico. Later, Plaintiffs were given "written instructions" that upon arrival, they would be greeted by representatives of Defendant Amstar DMC, S.A. *Id*. at ¶¶ 11–12. When Plaintiffs arrived in Mexico on June 10, 2015, they were indeed greeted by individuals who Plaintiffs identified as representatives of all three companies: Cheapcaribbean.com, Apple Vacations, and Amstar. *Id*. at ¶ 27. Shortly before midnight, Plaintiffs boarded a vehicle operated by an Amstar employee, who Plaintiffs allege drove negligently in inclement weather and crashed the vehicle into a building, injuring Plaintiffs. *Id*. at ¶¶ 28–34. Plaintiffs allege that the Amstar employee who drove the vehicle was also an agent of the three other named defendants. *Id*. at 29.

Plaintiffs filed a complaint alleging negligence, agency, and common law fraud in Illinois state court against Defendants for both the negligent driving of the vehicle and also for the representations that Defendants would provide Plaintiffs with "reliable and safe ground transportation." *Id*. at ¶¶ 297–302. Plaintiffs allege that all four named Defendants are "doing business in all 50 states, including Cook County, Illinois" because they either "engaged in the business of selling all-inclusive travel packages via the internet and telephone sales" or "advertis[ed] destination management services and [sold] such services via the internet and telephone sales in all 50 states." *Id*. at ¶¶ 3–6.

Cheapcaribbean.com is a Delaware corporation with its primary place of business in Addison Texas. *See* (Dkt. 12-1 at 7) (Affidavit of S. Dumaine). Apple Vacations is a Delaware limited liability company, whose sole member is ALG Integrated Holdings, Corp.—a Delaware corporation with its principal place of business in Pennsylvania. *See* (Dkt. 1 at ¶ 11); *see also* (Dkt. 12-1 at 10) (Declaration of W. Hopping). In addition, Apple Vacations is "registered with the Illinois Secretary of State." (Dkt. 1-1 at ¶ 4). Amstar is incorporated in the British Virgin Islands with its principal place of business in the Dominican Republic. *See* (Dkt. 12-1 at 2) (Declaration of E. Rybicki). According to its president, Amstar "does no business in Illinois." *Id*. Finally, Plaintiffs allege that Cheapcaribbean.com, Apple Vacations, and Amstar are all operating subsidiaries of Apple Leisure Corporation, and that Defendants constitute an "integrated travel company doing business in all 50 states." (Dkt. 1-1 at ¶¶ 9–10). Plaintiffs allege that Apple Leisure Corporation is a Delaware corporation headquartered in Pennsylvania. *Id*. at ¶ 5. However, documents submitted with Defendants' filings indicate that Apple Leisure Corporation, although it previously had existed under Delaware law, entered void status as of March 1, 2000. *See* (Dkt. 1-1 at 22); *see also* (Dkt. 25-1) (Declaration of R. Campobasso & Ex. A). Despite this fact, Plaintiffs appear to have served the registered agent provided by the Delaware Secretary of State for Apple Leisure Corporation. *See* (Dkt. 1-1 at 13–14).

Apple Vacations and Cheapcaribbean.com removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[1] Shortly thereafter, Apple Vacations, Cheapcaribbean.com, and Amstar moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for

---

[1] Amstar maintains that it was not properly served and therefore was not required to join in the removal. In addition, Defendants maintain that Apple Leisure Corporation is in void status and is not amenable to suit. The Court agrees, as discussed herein.

3

improper venue, and Rule 12(b)(5) for improper service on Amstar. (Dkt. 12). Before responding to Defendants' motion, Plaintiff moved to remand the case. (Dkt. 18).

## ANALYSIS

### I. Plaintiffs' Motion to Remand

#### A. Legal Standard

"The federal removal statute permits a defendant to remove a civil action from state court when a district court has original jurisdiction over the action." *Micrometl Corp. v. Tranzact Techs., Inc.*, 656 F.3d 467, 470 (7th Cir. 2011) (citing 28 U.S.C. § 1441(a)). The party invoking federal jurisdiction has the burden of establishing that it exists. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004) (a removing defendant must demonstrate "reasonable probability that subject-matter jurisdiction exists"). In deciding whether to remand a case, the Court assumes the truth of the factual allegations of the complaint unless they are contradicted by evidence (such as affidavits) submitted by the defendant. *Deb v. Sirva, Inc.*, 832 F.3d 800, 808–09 (7th Cir. 2016). Further, a plaintiff's choice of forum is presumed valid, and the Court must resolve any doubts about jurisdiction in favor of remand. *See, e.g., Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum"); *Schmude v. Sheahan*, 198 F. Supp. 2d 964, 966 (N.D. Ill. 2002) ("Generally, the removal statute is strictly construed, with an eye towards limiting federal jurisdiction").

#### B. Jurisdiction

In this case, Defendants assert that the Court has jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332(a). In order for jurisdiction to be founded on diversity of

citizenship, there must be complete diversity of citizenship—*i.e.*, no plaintiff can be a citizen of the same state as any defendant. *See LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 546 n.1 (7th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). In addition to the citizenship requirement, the matter in controversy must exceed "the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Plaintiffs' motion to remand presents four arguments, only two of which are considered in detail below. These two arguments strike at the core of the Court's jurisdiction over this matter: that Defendants have not established either (1) complete diversity among the parties or (2) the amount in controversy.[2]

### 1. Citizenship

For the purpose of determining citizenship, a corporation is a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (the phrase "principal place of business" means the place where a corporation's officers direct, control, and coordinate the corporation's activities). A limited liability company is deemed to share the citizenship of each of its members for purposes of federal diversity jurisdiction. *See Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007).

---

[2] Plaintiffs' third argument—that Defendants have not complied with Federal Rule of Civil Procedure 7.1—is moot, as Defendants have filed amended disclosure statements. *See* (Dkts. 27, 28, 29). Finally, Plaintiffs' fourth argument—that Defendants' arguments for dismissal based on lack of personal jurisdiction and improper venue "preclude[] removal" (Dkt. 18 at 1–2)—is without merit. Although both are necessary for suit, federal subject-matter jurisdiction and personal jurisdiction are not synonymous. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (the concepts of subject-matter and personal jurisdiction serve different purposes); *Outboard Marine Corp. v. Stumbras*, 1991 WL 22511, at *4 (N.D. Ill. Feb. 14, 1991) ("Subject matter jurisdiction and personal jurisdiction are different animals, and the existence (or absence) of one does not create the existence (or absence) of the other."). Plaintiffs' general citation to a Ninth Circuit case involving the remand of an improperly removed state court shareholder derivative action based on lack of federal question jurisdiction does not change this result. *See* (Dkt. 18 at 2) (citing *Dennis v. Hart*, 724 F.3d 1249 (9th Cir. 2013)).

As stated above, Plaintiffs—Iowa citizens—brought suit against four Defendants: Apple Vacations, Cheapcaribbean.com, Amstar, and Apple Leisure Corporation. In their complaint, Plaintiffs clearly allege that all Defendants are citizens of states (or foreign countries) other than Iowa. *See* (Dkt. 1-1 at ¶¶ 3–6). Although Defendants' filings clarify certain details, the parties do not dispute that Cheapcaribbean.com, Apple Vacations, and Amstar are not citizens of Iowa. Therefore, the dispute centers on whether the presence of Apple Leisure Corporation requires remand. Specifically, Plaintiffs argue that because Apple Leisure Corporation has not yet appeared in this action, there can be no finding "that complete diversity exists." (Dkt. 18 at 2). The Court disagrees.

Again, the Court takes the allegations of the complaint as true unless contradicted by Defendants' evidence. *CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000) ("We look first to the complaint to determine whether subject matter jurisdiction is established, accepting as true all well pleaded allegations and the inferences that may be reasonably drawn from those allegations."). The complaint alleges that Apple Leisure Corporation is a Delaware corporation headquartered in Pennsylvania. (Dkt. 1-1 at ¶ 5). According to the complaint, therefore, Apple Leisure Corporation is diverse from Plaintiffs. For their part, Defendants do not dispute that Apple Leisure Corporation was at one time a corporation organized and existing pursuant to the laws of Delaware, and Defendants have not offered evidence that destroys diversity—that is, evidence that Apple Leisure Corporation maintains (or maintained) its principal place of business in Iowa. Instead, Defendants have offered evidence that Apple Leisure Corporation is "void." *See* (Dkt. 1-1 at 22); (Dkt. 25-1). According to Defendants, Apple Leisure Corporation "ceased to exist in 2000" and therefore could not have a principal place of business outside of Delaware, further confirming that the

parties are diverse. Accordingly, on the record before it, the Court concludes that the parties are diverse.[3] *See also, e.g.*, *Pratt v. Green Bay Distributors, Inc.*, 2017 WL 4250111, at *2 (S.D. Ind. Sept. 26, 2017) (stating that the Seventh Circuit has not addressed whether inactive or dissolved corporations are considered to have principal places of business for jurisdictional purposes, but concluding based on a review of other court of appeal precedent that "a dissolved corporation should be treated as a citizen of both the state in which it was incorporated and the state in which it last transacted business").

---

[3] Alternatively, Defendants argue that joinder of the non-existent Apple Leisure Corporation to this case is fraudulent. *See* (Dkt. 25 at 2–3). As a general matter, a corporation's capacity to sue and be sued in a federal court is "determined by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Information generated by the removing Defendants using the Delaware Secretary of State website (the same website used by Plaintiffs to locate service-of-process information (Dkt. 18 at 5–6)) shows Apple Leisure Corporation's status as "void" as of March 1, 2000, and delinquent in taxes. Section 510 of the Delaware Corporation Law addresses the effect on a corporation of its failure to pay the state any franchise tax or other tax that has been assessed against it or that it is otherwise required to pay. Under that provision, the failure to pay the tax causes the charter of the corporation to be void. Del. Code tit. 8, § 510. The parties have not provided any indication that Apple Leisure Corporation's charter has been reinstated. The question is, then, what effect Apple Leisure Corporation's void status had on its ability to sue and be sued in this case.

The Court notes the presence of authority that applies § 278 of the Delaware General Corporation Law (providing that a corporation continues to exist as a "bod[y] corporate for the purpose of prosecuting and defending suits" for three years after it has nominally been dissolved) to void corporations. *See Sanders v. Vari*, 143 A.2d 275, 276 (Del. Ch. 1958) (applying § 278 to a corporation declared void for non-payment of franchises taxes); *see also Darley Liquor Mart, Inc. v. Bechtel*, 1982 WL 593130, at *1 (Del. Super. Ct. Mar. 19, 1982). More recently, although not expressly citing to § 278, the Court of Chancery concluded that the general rule which authorizes dissolved corporations to close their affairs, applies to void corporations. *First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.*, 2005 WL 2173993, at *7 (Del. Ch. Sept. 6, 2005). Under this interpretation, Apple Leisure Corporation would have lost its capacity to sue or be sued in March 2003. However, the Court is also aware of authority observing that a Delaware corporation that lost its charter had not been "dissolved." *See Wax v. Riverview Cemetery Co.*, 24 A.2d 431, 436 (Del. Super. Ct. 1942) (corporation whose certificate of incorporation was revoked was "not completely dead"); *see, e.g.*, *In re Efoora, Inc.*, 472 B.R. 481, 486 (Bankr. N.D. Ill. 2012) (analyzing Delaware law and finding that "[u]nlike dissolution, forfeiture of the certificate of incorporation does not mean the corporation ceases to exist"). Still, in spite of this discrepancy, Plaintiffs have failed to submit any evidence to rebut Defendants' showing that Apple Leisure Corporation is no longer an existing corporation in good standing in the State of Delaware or demonstrating that it has revived it existence in its state of incorporation. Having forfeited its charter, and failed to revive itself as an existing corporation in its state of incorporation, the Court is convinced that Apple Leisure Corporation lost the capacity to sue and be sued. *See, e.g.*, *Manney v. Intergroove Tontrager Vertriebs GMBH*, 2011 WL 6026507, at *7 (E.D.N.Y. Nov. 30, 2011) (analyzing the capacity of a void Delaware corporation to sue and be sued). Accordingly, the Court agrees with Defendants that Apple Leisure Corporation could be disregarded for jurisdictional purposes. *Schur*, 577 F.3d at 763.

## 2.     Amount in Controversy

Next, the parties appear to dispute whether the minimum-$75,000 amount-in-controversy requirement has been met.  The removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover.  *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006); *Oshana v. Coca–Cola Co*., 472 F.3d 506, 511 (7th Cir. 2006).  Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), once that allegation is called into question, as Defendants' has been here, the defendant must "prove [its] jurisdictional facts by a preponderance of the evidence."  *See Meridian Sec. Ins. Co.*, 441 F.3d at 543.  This can be done in a number of ways, including but not limited to contention interrogatories or admissions, calculations derived from the complaint's allegations, reference to plaintiff's informal estimates or settlement demands, or expert testimony.  *Id.* at 541.  This "list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint," such as "what a judgment would be worth to the plaintiff."  *Id*. at 542.

Whether damages will exceed $75,000 is not a fact but a prediction."  *Id*. at 541.  Once this damages estimate supported by "competent" proof is made, "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum."  *Id*. at 543; *see also Back Doctors Ltd. v. Metro. Prop. & Cas. Co., Inc.*, 637 F.3d 827, 830 (7th Cir. 2011) ("[T]he estimate of the dispute's stakes advanced by tConhe proponent of federal jurisdiction controls unless a recovery that large is legally impossible.").

Plaintiffs assert in their opening brief that Defendants have failed to satisfy their burden. (Dkt. 18 at 3–4). Specifically, Plaintiffs argue that Defendants do not have a "good faith basis" underlying their removal allegation that the amount in controversy exceeds $75,000. *Id.* at 3. According to Plaintiffs, this is because no settlement demand has been made to date and also because their counsel is still in the process of gathering their medical bills and records to make a damage assessment—meaning that no one is able "to fully assess the value" of their claims at this time. *Id.* at 4. As such, Plaintiffs argue that Defendants' reliance on a "snippet of an email from Plaintiffs' counsel, stating that 'my clients were seriously injured'" is "dubious." *Id.* at 3. Notably, Plaintiffs do not argue that they seek damages under the jurisdictional threshold.

In response, Defendants argue that this issue has been rendered moot by Plaintiffs' alleged statements to Defense counsel and to the Court subsequent to filing their motion to remand. (Dkt. 25 at 4). Defendants have not submitted any statement or admission as an exhibit nor have they specifically pointed to its existence in the record aside from generally referring to a status hearing held in this matter on August 24, 2017. Having reviewed the transcript from the hearing at issue, the Court does not agree that Plaintiffs made statements on the record that dispose of this issue. Although Defense counsel represented at the hearing that Plaintiffs' counsel had privately indicated that they would not contest the amount-in-controversy issue, Plaintiffs' counsel did not confirm that position and Plaintiffs have not indicated concession on this issue in their briefing before the Court. The Court notes, however, that Plaintiffs' reply in support of their motion to remand (Dkt. 32) does not contain argument (or even mention) of the amount-in-controversy requirement. Alternatively, Defendants argue that the complaint allegations are sufficient to formulate a "plausible estimate" of the amount in controversy that exceeds $75,000. (Dkt. 25 at 5); *see also* (Dkt. 1 at ¶ 17). Specifically, Defendants point to

9

Plaintiffs' allegations that they each have suffered "pain and suffering, disability, disfigurement, loss of income, loss of a normal life, and medical expenses." (Dkt. 25 at 5).

Even if the issue has not been conceded by Plaintiffs, the Court finds that the amount in controversy has been satisfied. Despite the fact that Defendants' "plausible estimate" of the damages in the case lacks detail—at minimum, say, a rough estimate of what the Plaintiffs' claim is worth—Defendants' argument is compelling, particularly because of the wording of the complaint. In particular, Plaintiffs' state-court complaint *ad damnum* clauses seek compensatory damages "well in excess in [sic] the jurisdictional limit of $30,000.00, plus costs" for both Brian Congdon's and Linda Congdon's injuries—or more than $60,000. (Dkt. 1-1 at ¶¶ 34, 69); *see also id.* at ¶¶ 148, 302 ("which sum is greater than the jurisdictional limits of $30,000 each"). Such allegations do not mean that the amount in controversy is *not* over $75,000. Plaintiffs' complaint explicitly requests damages for current and future "pain, suffering, disability, disfigurement, loss of income, loss of a normal life, and medical expenses" as well as "lost wages." *See id.* at ¶¶ 34, 69, 148, 302. Such damages could easily exceed $75,000. *See, e.g.*, *Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514–15 (7th Cir. 2006) (holding that jurisdiction was proper where the plaintiff's complaint sought damages "in excess of $50,000" and alleged "severe and permanent" injuries, and where discussion between counsel led the removing defendant to believe the plaintiff's medical and rehabilitation expenses alone would exceed $75,000, and the plaintiff did not challenge the removing defendant's estimate of his potential damage); *Rising–Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006) (noting in dicta that even where medical expenses and lost wages amounted to only $45,000, "[a] modest allowance for pain, suffering, and future losses (either income foregone or medical expenses incurred) brings the total over the threshold."). In states like Illinois, plaintiffs are not

limited in their recovery to the dollar amount sought in their complaint. *See, e.g.*, *Am. Bankers Life Assur. Co. v. Evans*, 319 F.3d 907, 908 (7th Cir. 2003) (citations omitted). Thus, considering the allegations concerning the injuries and damages requested by both Plaintiffs, it is distinctly possible that the amount at stake in the underlying suit is more than $75,000.

Plaintiffs' argument that counsel has not yet completed his review of Plaintiffs' medical bills and other records is not sufficient to call the amount in controversy into question, because it is neither specific nor does it indicate that Plaintiffs' recovery may be less than $75,000, particularly where the complaint already seeks in excess of $60,000. Moreover, the law of this Circuit holds that a plaintiff wishing to defeat federal diversity jurisdiction can file a binding stipulation or affidavit with the complaint, irrevocably committing to accept no more than $75,000. *See Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011); *Back Doctors Ltd.*, 637 F.3d at 830–31. That was not done here. In sum, the Court is convinced that this case is properly in federal court under diversity jurisdiction.

## II. Defendants' Motion to Dismiss

Defendants Cheapcaribbean.com, Apple Vacations, and Amstar further argue that the case should be dismissed for lack of personal jurisdiction over all named Defendants or, alternatively, for improper venue and for improper service on Defendant Amstar. Because the Court finds the personal jurisdiction analysis dispositive, it limits its analysis accordingly. "Like subject-matter jurisdiction, personal jurisdiction must be addressed and resolved ahead of substantive issues such as the statute of limitations." *Weisskopf v. Marcus*, 695 F. App'x 977, 978 (7th Cir. 2017) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)).

A.     **Legal Standard**

A motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) challenges personal jurisdiction over a defendant. When a district court relies solely on written materials to rule on a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. *See Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). As with analyzing Plaintiffs' motion to remand, Plaintiffs' jurisdictional allegations are accepted as true unless proved otherwise by Defendants' affidavits or exhibits. *See Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see also Deb*, 832 F.3d at 809 (considering a motion to dismiss, a court may consider matters outside of the pleadings to resolve factual questions pertaining to jurisdiction, process, or indispensable parties). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 783.

B.     **Personal Jurisdiction**

Under the Due Process Clause, before an out-of-state defendant may be required to defend a case in the forum state, it must have "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" standard ensures that a nonresident defendant will not be forced to

litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King v. Rudzewicz*, 471 U.S. 462, 474–75 (1985).

There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). General jurisdiction is "all-purpose"; it exists only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essential at home in the forum State." *Id*. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal quotation marks and alterations omitted). "Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (citation omitted).

When a court's subject matter jurisdiction is based on diversity of citizenship—as in this matter—the court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *See Hyatt Int'l v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Accordingly, the Court looks to the Illinois long-arm statute, 735 ILCS 5/2-209. Subsection (a) contains provisions pertaining to specific jurisdiction, whereas subsection (b) contains provisions pertaining to general jurisdiction. Subsection (c) contains a "catch-all" provision allowing Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. *See* 735 ILCS 5/2–209(c); *see also Hyatt Int'l*, 302 F.3d at 714. Although the United States and Illinois Constitutions do not contain identical due process guarantees, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l*, 302 F.3d at 715. Traditionally, Illinois courts apply a two-part test to decide jurisdictional issues

under the long-arm statute, "first determining whether a specific statutory provision of section 2-209 has been satisfied, and then determining whether the due process requirements of the United States and Illinois Constitutions have been met." *Russell v. SNFA*, 2013 IL 113909, ¶ 29.

Plaintiffs assert only that the Court has general jurisdiction to adjudicate the controversy pursuant to 735 ILCS 5/2-209(b)(4), which confers jurisdiction over a "corporation doing business within this State."[4] The "doing business" requirement under subsection (b)(4) of the long-arm statute is a very demanding standard for a plaintiff to meet and "requires the nonresident corporation's business activity in Illinois to be carried on, not casually or occasionally, but with a fair measure of permanence and continuity." *Inman v. Howe Freightways, Inc.*, 2015 IL App (1st) 1150224-U, ¶ 16. In addition, the Illinois Supreme Court has held that "in light of [the Supreme Court's decision in] *Daimler* [*AG v. Bauman*, 134 S. Ct. 746 (2014)], subsection (b)(4) cannot constitutionally be applied to establish general jurisdiction where . . . there is no evidence that defendant's contacts with Illinois have rendered it 'essentially at home' in this state." *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 21. Specifically, in analyzing general jurisdiction, "the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction." *Kipp*, 783 F.3d at 698. Beginning with *Goodyear*, the Supreme Court emphasized that, because general jurisdiction exists even with respect to conduct entirely unrelated to the forum state, it should not lightly be found. 564 U.S. at 919. Continuing this view, *Daimler* established that a corporate defendant is subject to general jurisdiction only where the corporation's place of incorporation or principal place of business is located, except in the most "exceptional" cases. 134 S. Ct. at 760–61 & n.19.

---

[4] Plaintiffs' argument that the "doing business" standard is somehow different from the long arm statute is misguided, particularly where Plaintiffs themselves cite to 2-209(b)(4) as the source of the "doing business" standard. In any event, as is described herein, the exercise of personal jurisdiction in Illinois is constrained by the Illinois and federal Constitutions, and therefore, the "doing business" standard now cannot be applied in excess of the boundaries established by *Goodyear* and *Daimler*.

Here, none of the Defendants are incorporated or have their principal places of business in Illinois. Accordingly, to show that this is an exceptional case under *Daimler*, Plaintiffs must show that each of the Defendants' affiliations with Illinois are so continuous and systematic as to render them essentially at home in Illinois, which is more than the "substantial, continuous, and systematic course of business" that was once thought to suffice. *Id.* at 754, 760–61; *see also, e.g.*, *My Canary LLC v. Cessna Aircraft Co.*, 2017 WL 201373, at *3 (N.D. Ill. Jan. 18, 2017) (plaintiffs must show that the jurisdictional contacts of each defendant support general jurisdiction). Plaintiffs have not offered anything beyond their complaint allegations to make such a showing. Instead, they attempt to meet this standard by arguing that all of the Defendants are "doing business" in Illinois because they sell travel packages in the State by use of the Internet and telephone and they actively advertise all-inclusive vacations in the State. *See* (Dkt. 26 at 4–5). The complaint makes clear that Plaintiffs believe that Defendants' activities occur "in all 50 states, including Cook County, Illinois." (Dkt 1-1 at ¶¶ 3–6). Plaintiffs also point out that Apple Vacations is registered to do business with the Illinois Secretary of State. *Id.* at ¶ 4.

These contacts are insufficient, and Illinois cannot exercise general jurisdiction over any of Defendant in this case. Put differently, none of the activities alleged are sufficient for the Court to conclude that any of the Defendants are "essentially at home" in the State, which again has supplanted the generic "doing business" standard for general jurisdiction in Illinois. *Aspen American Ins. Co.*, 2017 IL 121281, ¶ 21; *Daimler*, 134 S. Ct. at 757 ("a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity'") (quoting *Int'l Shoe Co.*, 326 U.S. at 318). In fact, even before the Supreme Court's recent pronouncements, Illinois courts and

federal courts applying Illinois law have often found a lack of general jurisdiction in similar situations.

First, "mere advertisement and solicitation [in Illinois] does not subject a defendant to personal jurisdiction." *Inman*, 2015 IL App (1st) 1150224-U, ¶ 20 (citing *Riemer v. KSL Recreation Corp.*, 348 Ill. App. 3d 26, 36 (1st Dist. 2004)); *see also Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 564 (1st Dist. 2006) (Wisconsin corporation's activities of advertising in Illinois, sometimes appearing at Illinois trade shows, maintaining an Illinois telephone number, and deriving some revenue from the residents of this state were insufficient to confer general jurisdiction). Put bluntly, "no case has ever held that solicitation alone is sufficient for general jurisdiction." *Kipp*, 783 F.3d at 699; *accord Ruddy v. Wilmot Mountain, Inc.*, 2011 WL 3584418, at *3 (N.D. Ill. Aug. 12, 2011) ("Illinois courts consistently reject mere solicitation of business as a basis for the exercise of general personal jurisdiction."). Here, Plaintiffs allege nothing more than generic solicitation; Plaintiffs do not allege (or otherwise show) that any solicitation, advertising, or sales were conducted with any specificity to Illinois. In fact, Plaintiffs' allegations demonstrate that Defendants' activities were *not* specific to Illinois: Plaintiffs allege that all of the Defendants are selling travel packages "in all 50 states." This further underscores that general personal jurisdiction is not appropriate in Illinois. *See, e.g.*, *Bryant v. QuiBids LLC*, 2012 WL 394154, at *3 (N.D. Ill. Feb. 3, 2012) (no general personal jurisdiction over defendant who had a national advertising campaign and who maintained a nationally accessible website that advertised, solicited business, registered and accepted payments, and permitted Illinois residents to participate in penny auctions); *Elayyan v. Sol Melia, SA*, 571 F. Supp. 2d 886, 899 (N.D. Ind. 2008) ("General jurisdiction cannot be based on nationwide advertising alone.").

Similarly, the fact that a foreign corporation's website is accessible in Illinois does not confer general jurisdiction on its own. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) ("Each of the individual defendants maintains a public website obviously accessible by Illinois residents, but as we have noted, that is not enough to establish general personal jurisdiction."); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) ("Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'"); *see, e.g.*, *Addiction & Detoxification Inst., LLC v. Yee*, 2015 WL 997166, at *3 (N.D. Ill. Mar. 3, 2015) ("[I]t should go without saying that 'the maintenance of a public Internet website [is in]sufficient, without more, to establish general jurisdiction.'") (quoting *Tamburo*, 601 F.3d at 701); *accord Bryant*, 2012 WL 394154, at *3.[5] More to the facts of this case, even "[a] website that allows customers to make and pay for reservations over the Internet for lodging in foreign states is not a sufficient basis for the exercise of general jurisdiction." *Breschia v. Paradise Vacation Club, Inc.*, 2003 WL 22872128, at *3 (N.D. Ill. Dec. 4, 2003); *see also Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.*, 336 Ill. App. 3d 572, 581 (4th Dist. 2002) (concluding that the exercise of personal jurisdiction over defendant Missouri hotel who advertised in Illinois, took reservations from Illinois residents, and received guests from Illinois "would not be fair, just, or reasonable").

Finally, it has long been held that registering to do business in a state, "standing alone," cannot satisfy due process required to assert personal jurisdiction. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990); *see also, e.g.*, *Leibovitch v. Islamic Republic of Iran*, 2016 WL 2977273, at *8 (N.D. Ill. May 19, 2016) (registering to do business in

---

[5] *See also Caldwell v. CheapCaribbean.com, Inc.*, 2010 WL 3603778, at *5 (E.D. Mich. Sept. 8, 2010) (Cheapcaribbean.com website on its own was insufficient to establish general jurisdiction).

a state or designating a registered agent for service of process is insufficient to make a corporation "at home" in a state) (collecting cases). The Illinois Supreme Court recently affirmed this point. *Aspen*, 2017 IL 121281, ¶¶ 22, 27. Considering all of Defendants' alleged activities together—the nationwide solicitation and selling of travel packages, the national accessibility of the websites of the Defendants, and Apple Vacations' registration with the Illinois Secretary of State—still is not enough for the Court to find that any one of the Defendants is "at home" in Illinois.

In support of their theory, Plaintiffs point to *Braband v. Beech Aircraft Corp.*, 72 Ill. 2d 548 (1978), but that case is both distinguishable and out of step with current Supreme Court precedent. *See* (Dkt. 26 at 6). In *Braband*, which involved an airplane crash in Canada, the Illinois Supreme Court held that a foreign corporation was "doing business" in Illinois because it had entered into a sale and distribution agreement with an Illinois company, under which it agreed to "perform all warranty, maintenance and repair services on all Beechcraft planes covered by warranty provisions" and which allowed the foreign corporation to inspect the Illinois company's operation (facilities, records, personnel, etc.). In addition, the foreign corporation's marketing manager made frequent visits to the Illinois company, and the foreign corporation sponsored an extensive sales program in Illinois, which included a five-year period of telephone directory advertising that indicated where consumers could purchase the foreign corporation's products and parts in Illinois. *Id.* at 559.[6]

---

[6] Plaintiffs also rely on *Colletti v. Crudele*, 169 Ill. App. 3d 1068 (1st Dist. 1988) (*see* (Dkt. 26 at 4)), but that case is also distinguishable. There, the court exercised general jurisdiction over a Florida trucking company that had a registered agent in Illinois and had already appeared in three related cases filed in Illinois, noting that the company's business operations in Illinois "cannot necessarily be minimized" even though they accounted for only a small percentage of its overall business. The court observed that personal jurisdiction was "a close question" but concluded that the "peculiar circumstances" of the case—specifically, the defendant's appearance in three related cases without contesting personal jurisdiction there—tipped the balance in the plaintiff's favor. Again, not only are the same circumstances not present

Here, Defendants' alleged activities do not rise to the level of those in *Braband*, and even if they did, the jurisdictional standard in that case has since been clarified and strengthened in *Daimler* and *Goodyear*, as discussed above. In fact, the Illinois Supreme Court recently applied these bolstered principles in *Aspen American Ins. Co.*, 2017 IL 121281. There, the roof of a Michigan warehouse owned by the defendant—an Indiana corporation with its principal place of business there as well—collapsed and destroyed goods owned by the plaintiff's insured. The plaintiff brought suit in Illinois and argued that general jurisdiction over the defendant was present because defendant was "doing business" in the State through its ownership of a warehouse in Joliet, Illinois and its registration with the Illinois Secretary of State. The Illinois Supreme Court disagreed. *Id*. at ¶ 19. Although the plaintiff had "established that defendant does business in Illinois through the warehouse in Joliet," the court found that "this fact falls far short of showing that Illinois is a surrogate home for defendant. Indeed, if the operation of the warehouse was sufficient, in itself, to establish general jurisdiction, then defendant would also be at home in all the other states where its warehouses are located. The Supreme Court has expressly rejected this reasoning." *Id*.; *see also Daimler*, 134 S. Ct. at 762 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

The Court reaches the same conclusion here. Accepted as true, Plaintiffs' allegations concerning Defendants' business practices in Illinois (and across the country) fail to make a *prima facie* showing that any one of the Defendants is "essentially at home" in Illinois.[7]

---

in the instant case, *Colletti* was decided long before the more rigorous *Goodyear/Daimler* standard was articulated by the Supreme Court.

[7] The Court also does not have specific jurisdiction over this matter. Specific jurisdiction exists when "the defendant's suit-related conduct creates a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). Put differently, an Illinois court may exercise specific jurisdiction only when the nonresident defendants have purposefully availed themselves of the privilege of conducting business within Illinois and the plaintiffs claims arise out of the defendants' contacts with Illinois. None of the conduct giving rise to the suit took place in Illinois: the Plaintiffs do not allege that

Therefore, this Court cannot conclude that Defendants have purposefully availed themselves of the privilege of conducting activities within Illinois and invoked the protections and benefits of its laws such that hailing Defendants into an Illinois court would be both fair and reasonable. *Hanson*, 357 U.S. at 253. Maintaining this suit would offend due process, and the Court concludes that it lacks personal jurisdiction over the Defendants in this action.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to remand (Dkt. 18) is denied. Defendants Cheapcaribbean.com, Apple Vacations, and Amstar's motion to dismiss (Dkt. 12) for lack of personal jurisdiction is granted, and the case is dismissed without prejudice.

_____
Hon, Virginia M. Kendall
United States District Judge

Date: November 3, 2017

---

any of their transactional dealings with the Defendants occurred in Illinois (instead, they only allege that the transaction occurred "within the United States") and the vehicle accident in which Plaintiffs were injured occurred in Mexico.